UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

ELIZABETH M. RYAN, individually and on behalf of the
estate of THOMAS W. RYAN, deceased,

                                Plaintiff,                      **MEMORANDUM &**
    -against-                                                         **ORDER**

                                                                                04-CV-2666 (ENV) (KAM)

STATEN ISLAND UNIVERSITY HOSPITAL,
GILBERT LEDERMAN, GILBERT LEDERMAN, M.D.,
P.C., and PHILIP JAY SILVERMAN,

                                  Defendants.

------------------------------------------------------------------------ X
**KIYO A. MATSUMOTO, United States Magistrate Judge:**

        In June 2004, plaintiff Elizabeth M. Ryan commenced this action against defendant Staten Island University Hospital ("SIUH") and others, alleging claims of fraud, medical malpractice, and violations of New York State consumer protection and public health laws. Plaintiff claims that her husband, terminally ill from pancreatic cancer, was lured into useless treatment by defendants' aggressive false advertising, with misrepresentations of, among other things, a "95% success rate," for cancer treatment. Plaintiff alleges that defendants' misrepresentations enticed plaintiff's husband to leave his home in Florida, forego appropriate treatment, and subject himself to defendants' grossly negligent and unnecessary treatment, which shortened his life span and wrongfully enriched the defendants. (Doc. No. 1, Complaint ¶ 1.)

        On September 23, 2005, plaintiff moved to compel SIUH to respond to, among other things, plaintiff's second set of interrogatories, #14 and document request #10, which seek information concerning the success of the medical treatment that was used to treat the decedent,

including information from SIUH's peer review committee reports. During a telephone status conference with the undersigned on January 18, 2006, SIUH asserted that the information sought by plaintiff in her interrogatory #14 and document request #10 was privileged and thus not subject to disclosure. The Court then ordered SIUH to "provide a privilege log and legal support for the privileges invoked in response to plaintiff's discovery demands." (Doc. No. 47, Minute Entry of 1/18/06.) SIUH submitted its privilege log on February 1, 2006, (see Doc. No. 50, Letter from Nancy J. Block, dated 2/1/06 ("SIUH's Assertion of Privilege"), Ex. A); plaintiff submitted her opposition on February 8, 2006 (see Doc. No. 51, Letter from Richard I. Reich and Roman E. Gitnik, dated 2/8/06 ("Pl.'s Opp'n")); and SIUH replied on February 10, 2006 (see Doc. No. 52, Letter from Nancy J. Block, dated 2/10/06 ("SIUH's Reply").

> Plaintiff's interrogatory #14 requests the following:
>
> Identify any and all documents which set forth data concerning the treatment outcome and/or treatment outcome measurements of patients by cancer diagnosis who were treated with Body Radiosurgery at SIUH up to and through 2002. Provide a copy of any and all such documents excluding patient records.

(SIUH's Assertion of Privilege, at 1.) Plaintiff's document request #10 reads as follows:

> Provide a copy of any and all documents, excluding patient medical records, which set forth data concerning adverse events and Body Radiosurgery at SIUH up to and through 2002.

(Id. at 2.)

SIUH argues that the information sought by plaintiff pursuant to these requests is privileged under New York Public Health Law § 2805-m and Education Law § 6527(3). (See id. at 3.) SIUH further claims that plaintiff's request is overly broad and that information regarding its "knowledge or notice of adverse treatment outcomes [is not relevant to] plaintiff's claim of deceptive business practices and false advertising." (See SIUH's Reply, at 4.)

As a threshold matter, the Court addresses whether the information sought by plaintiff is relevant to "any claim or defense" in this action. Fed. R. Civ. P. 26(b)(1). Pursuant to Rule 26(b), any information that is not privileged and is "reasonably calculated to lead to the discovery of admissible evidence" may be discovered. National Congress for Puerto Rican Rights v. City of New York, 194 F.R.D. 88, 91 (S.D.N.Y. 2000) (citation omitted). Here, plaintiff seeks information regarding adverse treatment outcomes in relation to her claims for false advertising and deceptive business practices under Gen Bus. Law §§ 349 and 350 and her common law fraud claim.

General Business Law §§ 349 and 350 respectively prohibit "deceptive acts or practices" and "false advertising" "in the conduct of any business, trade or commerce or in the furnishing of any service in this state." "To state a claim for deceptive practices under either section, a plaintiff must show: (1) that the act, practice or advertisement was consumer-oriented; (2) that the act, practice or advertisement was misleading in a material respect, and (3) that the plaintiff was injured as a result of the deceptive practice, act or advertisement." Leider v. Ralfe, 387 F. Supp. 2d 283 (S.D.N.Y. 2005) (quoting Pelman v. McDonald's Corp., 237 F. Supp. 2d 512, 525 (S.D.N.Y. 2003)). The gravamen of plaintiff's complaint is that defendants violated these provisions of the General Business Law and committed common law fraud by making false claims regarding the success of its Body Radiosurgery cancer treatment. Among other things, defendants claimed that the procedure had a 95% success rate. (See Pl.'s Opp'n, at 6.) Evidence of adverse treatment outcomes is relevant to whether defendants' statements were materially misleading. Moreover, evidence of adverse treatment outcomes is discoverable in connection with plaintiff's common law fraud claims because such evidence relates to whether defendant

acted with the requisite intent to defraud.

Because the Court concludes that the information sought by plaintiff is discoverable under Rule 26(b), the Court next addresses whether such information is privileged. The parties agree that New York privilege law applies in this diversity suit arising from events that primarily occurred in New York. (Pl.'s Opp'n, at 2.) See Tartaglia v. Paul Revere Life Ins. Co., 948 F. Supp. 325, 326-327 (S.D.N.Y. 1996). SIUH asserts that the disputed documents are privileged under New York Public Health Law § 2805-m, which provides that "none of the records, documentation or committee actions or records required pursuant to section . . . [2805-j] shall be subject to disclosure under . . . article thirty-one of the civil practice law and rules. . . ."[1] Section 2805-j, among other things, requires hospitals to maintain a program for identifying and preventing medical malpractice, N.Y. Pub. Health L. § 2805(j)(l), and to collect and maintain information concerning negative treatment health care outcomes and incidents of injury to patients, id. § 2805-j(l)(e). SIUH also claims a privilege under Education Law § 6527(3), which protects from disclosure under CPLR article 31 "records relating to performance of a medical or a quality assurance review function or participation in a medical . . . malpractice prevention program."

With Education Law § 6527(3), the New York State Legislature intended to "'enhance the objectivity of the review process' and to assure that medical review committees 'may frankly and objectively analyze the quality of health services rendered.'" Logue v. Velez, 92 N.Y.2d 13, 17 (1998) (quoting Mem. of Assembly Rules Comm., Bill Jacket, L. 1971, ch.

---

[1] Section 3101 of the New York Civil Practice Law and Rules provides generally for "full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof."

990, at 6). At its heart, the statutory privilege in Education Law § 6527(3) is designed "to promote the quality of care through self-review without fear of legal reprisal." Katherine F. v. State of New York, 94 N.Y.2d 200, 205 (1999). Similar policy concerns were embodied in subsequent provisions of the Public Health Law, including § 2805-m, which conferred confidentiality to findings that were made as part of a peer review committee designed to prevent medical malpractice. Id. One of the primary goals of the comprehensive package of amendments to New York State's medical malpractice legislation (including Public Health Law § 2805-m) was to decrease the rising costs of medical insurance through decreasing the costs of malpractice premiums by physicians. See White v. New York City Health and Hosps. Corp., 1990 WL 33747, at *10 (S.D.N.Y. Mar. 19, 1990) .

These privileges, however, are not an absolute bar to disclosure. In actions not based on claims of medical malpractice, where the underlying policy of improving medical care was not implicated, courts have compelled disclosure of peer review committee findings. See, e.g., Tartaglia, 948 F.Supp. at 328-29 (allowing disclosure where defendant insurance company sought discovery of peer review and quality assurance information to defend against a breach of contract claim and to prevent insurance fraud); White, 1990 WL 33747, at *11 (permitting disclosure of incident reports filed by hospital in accordance with New York Public Health Law § 2805-l to allow plaintiff to prosecute civil rights action against hospital); Lizotte v. New York City Health and Hosps. Corp., 1989 WL 260217, at *2-6 (S.D.N.Y. 1989) (allowing disclosure of hospital incident reports and minutes of quality assurance committee meetings in civil rights action); but see Daly v. Genovese, 96 A.D.2d 1027 (2d Dep't 1983) (in defamation action, court denied plaintiff's motion to compel disclosure of allegedly defamatory statements made during

course of hospital peer committee review meetings).  The party asserting these privileges has the burden of establishing that: (1) the information sought by plaintiff was prepared in accordance with New York Education Law 6527(3) and Public Health Law 2805-m, see Marte v. Brooklyn Hosp. Ctr., 9 A.D.3d 41, 46 (2d Dep't 2004), and (2) the disclosure of such information would frustrate the purposes underlying the privileges, Spectrum Sys. Int'l Corp. v. Chemical Bank, 78 N.Y.2d 371, 377 (1991) ("[T]he burden of establishing any right to protection [from disclosure] is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity.").  See also Lizotte, 1989 WL 260217, at *3; White, 1990 WL 33747, at *6; Logue, 92 N.Y.2d at 17.

SIUH asserts that these documents were prepared in connection with "medical review committee meetings" and/or for purposes of peer review.  (Doc. No. 50-2, Privilege Log.)  Further, SIUH submits the affidavit of Karen Lefkovic, an employee of SIUH, who states that the documents listed in SIUH's privilege log were "procured, maintained and utilized solely as a part of the overall quality assurance of the Hospital."  (See Doc. No. 50, Ex. B, Affidavit of Karen Lefkovic, ¶ 3.)  Thus, SIUH arguably demonstrates that such documents were prepared in accordance with the provisions of the Public Health Law.  Compare Logue, 92 N.Y.2d at 18, with LaForte v. Staten Island U. Hosp., 2003 WL 21262389, at *4 (N.Y. Sup. Ct. May 13, 2003).

However, SIUH fails to meet its burden to demonstrate that disclosure of the information sought by plaintiff would frustrate the policies behind the privileges it asserts.  Plaintiff seeks adverse outcome treatment information in order to prosecute her General Business Law false advertising and deceptive business practices and common law fraud claims, rather than her medical malpractice claim.  (See Pl.'s Opp'n, at 1, ¶ 2.)  Thus, the underlying policies of

the statutory privilege are not directly implicated here.  See Tartaglia, 948 F.Supp. at 328-29; White, 1990 WL 33747, at *11; Lizotte, 1989 WL 260217, at *2-6.  Even though, as SIUH points out, plaintiff has asserted a cause of action for medical malpractice, the crux of her complaint asserts deceptive acts, false advertising and fraudulent business practices by defendants.  Thus, plaintiff does not seek information regarding "medical malpractice" or "physician misconduct" to demonstrate that such malpractice or misconduct actually occurred.  Rather, plaintiff seeks information regarding adverse treatment outcomes to demonstrate that defendants disseminated false information regarding the success rates of its Body Radiosurgery treatment.  Thus, to allow disclosure here will not hamper SIUH's ability to candidly review its procedures and physicians in order to "make adequate medical services available to the public." Tartaglia, 948 F. Supp. at 328.

Further, the potential harm to SIUH is minimal.  Plaintiff has agreed to enter into a confidentiality agreement that would prevent disclosure of those documents listed in SIUH's privilege log to anyone not a party to this action, thereby mitigating the risk of future litigation from other patients.  (See Pl.'s Opp'n, at 7.)  To further minimize any potential harm to SIUH, the Court will allow SIUH to redact from the documents listed in its privilege log the names of, and/or identifying information regarding, individual physicians or hospital employees not named as defendants in this action, as well as all identifying information regarding patients.[2]

More importantly, to foreclose discovery would subvert the important policies underlying General Business Law §§ 349 and 350.  See LaValle v. State of New York, 185 Misc.

---

[2] Should plaintiff later seek disclosure of the identity of any of these individuals, she may make an appropriate application demonstrating why disclosure is necessary.

2d 699, 702 (N.Y. Sup. Ct. 2000) (the public interest in preventing disclosure should be weighed against the "societal interests in redressing private wrongs and arriving at a just result in private litigation") (quoting <u>Cirale v. 80 Pine St. Corp.</u>, 35 N.Y.2d 113, 118 (1974)). As noted above, these consumer protection statutes prohibit fraudulent and deceptive business practices, including false advertising. The New York Court of Appeals has determined that General Business Law §§ 349 and 350 afford protection to consumers of medical services and products, recognizing that such consumers "might be particularly vulnerable to unscrupulous business practices." <u>Karlin v. IVF Am.</u>, 93 N.Y.2d 282, 291 (1999). Indeed, plaintiff alleges that she and her husband were "at their most vulnerable" when defendants allegedly lured them into their treatment program. (Doc. No. 1, Complaint ¶ 1.) Once medical services providers advertise their services and enter into the public marketplace, "they subject themselves to the standards of an honest marketplace secured by General Business Laws §§ 349 and 350." <u>Id.</u> at 294. In <u>Karlin</u>, the court held that the defendants' allegedly deceptive conduct — its dissemination of misleading statements regarding the success of its in vitro fertilization program — was "precisely the sort of consumer-oriented conduct that is targeted by [sections] 349 and 350." <u>Id.</u> at 293.

Thus, the Court agrees with plaintiff that disclosure is warranted here, because to prevent disclosure would "prevent plaintiff from obtaining the very evidence needed to prosecute the Gen. Bus. Law §§ 349 and 350 false advertising and deceptive business practices causes of action and common law fraud causes of action," (<u>see</u> Pl.'s Opp'n, at 4-5), and would undermine the policy underlying New York General Business Law §§ 349 and 350, "to ensure an honest marketplace," <u>Karlin</u>, 93 N.Y.2d at 287.

Finally, the Court addresses plaintiff's concern that SIUH "limits its disclosure concerning documents set forth in its privilege log to the years 2001 and 2002." (Pl.'s Opp'n, at 1.) Plaintiff's interrogatory request #14 and document request #10, insofar as they only specify that plaintiff seeks information "up to and through 2002," are vague and overly broad. Plaintiff fails to specify the range of years relevant to this action and, thus, SIUH reasonably limited its privilege log to the years 2001 to 2002. In her February 8, 2006 submission, however, plaintiff indicates that "[B]ody [R]adiosurgery was performed by defendants at SIUH commencing in approximately 1995 through 2002." (Id. at 1.) Therefore, the Court directs that SIUH provide plaintiff with all information responsive to plaintiff's interrogatory #14 and document request #10 requests from the years 1995 through 2002.

Within fourteen days of the date of this order, the parties shall submit to this Court a stipulation for a protective order regarding the documents listed in SIUH's privilege log. Within seven days after the Court "so orders" such stipulation, SIUH shall provide plaintiff answers and documents in response to plaintiff's interrogatory #14 and document request #10 for the years 1995 through 2002. SIUH may redact from those documents the names of, or any identifying information regarding, any physicians not named as defendants in this action, and all identifying information regarding patients.

**SO ORDERED.**
Dated: April 13, 2006
　　　Brooklyn, NY

　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　**Kiyo A. Matsumoto**
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge