UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

ELIZABETH M. RYAN, individually and on behalf of the
estate of THOMAS W. RYAN, deceased,

        Plaintiff,      **MEMORANDUM &**
 -against-              **ORDER**

                        04-CV-2666 (NG) (KAM)

STATEN ISLAND UNIVERSITY HOSPITAL,
GILBERT LEDERMAN, GILBERT LEDERMAN, M.D.,
P.C., and PHILIP JAY SILVERMAN,

        Defendants.

------------------------------------------------------------------------ X
**KIYO A. MATSUMOTO, United States Magistrate Judge:**

    In June 2004, plaintiff Elizabeth M. Ryan commenced this action against defendant Staten Island University Hospital (SIUH or defendant) and others, alleging claims of fraud, medical malpractice, and violations of New York State consumer protection and public health laws. Plaintiff claims that her husband, terminally ill from pancreatic cancer, was lured into useless treatment by defendants' aggressive false advertising, with misrepresentations of, among other things, a "95% success rate," for cancer treatment. Plaintiff alleges that defendants' misrepresentations enticed plaintiff's husband to leave his home in Florida, forego appropriate treatment, and subject himself to defendants' grossly negligent and unnecessary treatment, which shortened his life span and wrongfully enriched the defendants. (Doc. No. 1, Complaint ¶ 1.)

    Pending before the Court is plaintiff's third request for judicial intervention to resolve a discovery dispute with defendant SIUH.

-1-

## Procedural Background

On July 22, 2005, plaintiff served SIUH with her Second Set of Interrogatories and Second Request for Production of Documents. (See Plaintiff's Third Motion to Compel, dated November 7, 2006 (Pl.'s Mt.), Exh. 1.) During a telephone status conference with the undersigned on September 9, 2005, counsel for SIUH, Nancy J. Block, Esq.:

> informed all parties . . . that [SIUH] is attempting to access what is believed to be the Stereotactic Body Radiosurgery database. [Ms. Block] explained . . . that technological difficulties have interfered with access. Upon [defendant's counsel's] information and belief, this document, once accessible, contains a database of patients who received radiosurgery treatment. [Defendant's counsel] have also been advised that this database *lists patients by name and would require redaction if, and when, it is accessible.*

(Doc. No. 40, Letter from Nancy J. Block, dated 10/12/05, at 3.) (emphasis added).

On September 23, 2005, plaintiff moved to compel SIUH to respond to several of its interrogatory and document requests. On January 18, 2006, the parties participated in a telephone status conference with the undersigned, during which the Court asked Ms. Block about the status of SIUH's ongoing efforts to retrieve data necessary to respond to plaintiff's discovery demands. (See Pl.'s Mt., Exh. 4, Transcript of Civil Cause for Conference, dated 1/18/06, at 4-5.) Ms. Block responded that "both the data and that response are in progress." (Id. at 4-5.) The Court asked, "What is the status of your efforts to get responses because this is now several months?" (Id. at 5.) Ms. Block responded,

> Well, the problem with the data is that we had two issues with it. One was the fact that it was on a computer system . . . that didn't exist anymore. So, we had to try to get someone to, you know, really tap into that system and get the data. And we have recently been able to do that and *now we have to redact all confidential patient information*.

(Id. at 5.) When the Court asked when SIUH could produce that information, Ms. Block

responded: "In two weeks we could do it." (Id.)  The Court then ordered SIUH, *inter alia*, to: (1) "provide a privilege log and legal support for the privileges invoked in response to plaintiff's discovery demands by 2/1/06;" and (2) "supplement their discovery responses to specific discovery demands by plaintiff on or before 2/21/06." (Doc. No. 47, Minute Entry of 1/18/06.)

Accordingly, on February 1, 2006, SIUH submitted a privilege log on and asserted privileges with respect to eight categories of documents, under NYS Public Health Law § 2805 and Education Law § 6527(3). (See Pl.'s Mt., Exh. 12.) Notably, SIUH did not assert that any dates regarding SIUH patients were privileged or otherwise protected. (See id.)

On February 21, 2006, SIUH produced a paper document entitled "SIUH Body Radiosurgery Database December 31, 2002" (the database), a print-out of a database which lists all of the patients who were treated with radiosurgery at the hospital, including, *inter alia*, their diagnoses, year of treatment and type and location of cancer, through December 31, 2002. (See Pl.'s Mt., Exh. 3.) The database contains approximately 146 columns.[1] Each entry in approximately ten of the columns – "Last" (last name), "First" (first name), "RSNumber" (radiosurgery number), "PriorRSR" (prior radiosurgery number), "PostRSR" (post radiosurgery number), "Street," "City," "Zip," PhoneNum," and "SocSecNo" – is stamped "REDACTED."[2] (See id.) Approximately twelve columns – including "DOB" (date of birth), "DxDate" (diagnosis date), "Expire" (date of death), "Foll1" through "Foll4" (dates of follow-up examinations), "TrmtStrt" (treatment start date) and "TrmtEnd" (treatment end date) – contain

---

[1] The Court notes that the document submitted by plaintiff is a print-out of the electronic database, and is difficult to read. (See Pl.'s Mt., Exh. 3.) Therefore, the Court has provided its best estimate of the number of columns in the following discussion.

[2] See Pl.'s Mt., at 2 n. 3, for definitions of column headings.

dates noted only by year, and not month and day, but do not indicate any redactions. (See id.) Approximately eighty-seven columns – including "DateofRec" (date of recurrence), "CompDate" (date of treatment complications), "Foll5" through "Foll12" (dates of follow-up examinations) and "TrmtComp" (presumably date of treatment completion) – are completely or largely blank, but do not indicate any redactions. (See id.)

At the January 18, 2006 conference, the Court also set a briefing schedule for plaintiff to oppose SIUH's claims of privilege. Plaintiff submitted her opposition on February 8, 2006 (see Doc. No. 51, Letter from Richard I. Reich and Roman E. Gitnik, dated 2/8/06); and SIUH replied on February 10, 2006 (see Doc. No. 52, Letter from Nancy J. Block, dated 2/10/06). On April 13, 2006, the Court issued a memorandum and order, finding that the information sought by plaintiff was not privileged because "evidence of adverse treatment outcomes was relevant to whether defendant's statements were materially misleading" and "whether defendant acted with the requisite intent to defraud." (Doc. No. 75, Memorandum and Order, dated 4/13/06, at 3-4.) The Court further held that the documents were not privileged and ordered SIUH to produce all responsive information. (See id. at 8.) The Court also provided, "SIUH may redact from those documents . . . all identifying information regarding patients." (Id. at 9.) In addition, the Court ordered the parties to submit a protective order "regarding the documents listed in SIUH's privilege log." (Id.)[3]

On June 30, 2006, the parties participated in another telephone status conference before the undersigned, during which Ms. Block "repeatedly represented" that she had produced

---

[3] By order filed November 2, 2006, the Honorable Nina Gershon denied SIUH's motion to set aside this Court's April 13, 2006 order.

all responsive information, and "that the [database] was a true and complete copy of SIUH's body radiosurgery database through 2002 currently in its possession." (Pl.'s Mt., at 3.) For example:

- Ms. Block stated, "Your honor, we have made such a complete search so many times, and everything – I did take your [April 13, 2006] order very seriously and we worked very hard compiling what we did, and that is inclusive of everything." (Pl.'s Mt., Exh. 5, at 28)

- She further stated, "Your honor, we gave him the entire database through 2002, which has all the patients listed by cancer diagnosis . . . . It was quite voluminous and [plaintiff] has it. Other than this data, we don't have any information that is responsive to [plaintiff's] request." (Id. at 34-35.)

- Plaintiff's counsel, Mr. Richard Reich, asked, "Is there other data that you think existed that's not in the data that was allegedly provided to us?" Ms. Block responded, "That we allegedly provided to you? Richard, I gave you the data." Mr. Reich answered, "Well, I'm asking you now, while we are in this conference." Ms. Block stated, "All the data that's there. This is the data as it exists today." (Id. at 50.)

- Ms. Block stated, ". . . I've given all the information that we have," and "I'm giving you everything I have . . . ." (Id. at 56.)

In response to plaintiff's Third Set of Interrogatories, on October 6, 2006, SIUH unredacted entries in the previously produced SIUH Body Radiosurgery Database corresponding solely to decedent Thomas Ryan. (See Pl.'s Mt., at 4.) Plaintiff was "surprised to observe that decedent was the only patient in the entire [database] who had the actual month, day and year for date of his first treatment, dates of follow up [sic] evaluations and his date of death." (Id.)

Plaintiff deposed Frank Volpicella, a former data analyst at SIUH, on October 12 and 17, 2006. (See id.) Mr. Volpicella informed plaintiff that the hospital's data department routinely entered full dates, including month, day and year, into the database. (See Pl.'s Mt.,

Exh. 7, 10/17/06 Volpicella Tr., at 226-29, 248-51 and 256-58.) Mr. Volpicella also testified that he did not know why the full dates were missing from all of the entries in plaintiff's copy of the database. (See id. at 227.) In addition, Mr. Volpicella testified that he had provided Ms. Block with a back-up CD of the entire database approximately a year before his October 2006 deposition, which contained complete dates for all fields, and that the original CD was at his home on the date of his October 12 deposition. (See Pl.'s Mt., Exh. 8, 10/12/06 Volpicella Tr., at 15-24.)

Immediately upon concluding Mr. Volpicella's depostion, plaintiff wrote to defendant and demanded that SIUH: (1) preserve the original database CD, (2) produce the original CD, "subject to the redaction of patient's name, address and social security number" only; and (3) produce every hard drive on which the database was stored, subject to the same redactions. (Pl's Mt., Exh. 9, Letter from Roman E. Gitnik, dated 10/17/06.)

Defendant responded on October 23, 2006, objecting to the production of the complete database, asserting for the first time that "the information contained in the CD is privileged pursuant to the Heath Insurance Portability and Accountability Act of 1996 ("HIPAA") as well as physician-patient privileges." (Pl.'s Mt., Exh. 10, Letter from Nancy J. Block, dated 10/23/06.) Defendant further objected to producing hard drives as "privileged, burdensome and duplicative." (Id.) Defendant attached a supplemental privilege log, which listed each month and day in the database as privileged, pursuant to HIPAA and the physician/patient privileges. (See id.)

Plaintiff subsequently filed this third motion to compel, and requests that the Court order: (1) defendant to provide a true and complete copy of the Body Radiosurgery

Database, including the original CD, subject only to the redaction of patients' names, addresses, social security numbers and dates of birth, and to further supplement its discovery requests; (2) defendant to preserve the original CD; (3) defendant to identify all software used to access the database; (4) defendant to preserve each and every hard drive containing SIUH's database; (5) defendant to produce Frank Volpicella for a further one day of deposition; and (6) an extension of the time to complete fact discovery by six months. In addition, plaintiff requests that the Court award it "reasonable costs and expenses, including attorneys' fees, of this application and preparing and taking the deposition of Frank Volpicella on October 12 and 17, 2006," pursuant to Fed. R. Civ. P. 37(a)(4)(A) or (b)(2)(A)(B)(C). (Pl's Mt., at 11.) Defendant filed its opposition on November 17, 2006 (see Doc. No. 96, Letter from Nancy J. Block, dated 11/17/06), and plaintiff replied on November 22, 2006 (see Doc. No. 98, Letter from Richard I. Reich, dated 11/22/06). The Court considered the foregoing submissions and heard the arguments of counsel during a telephone conference with the parties on November 30, 2006. For the reasons stated on the record at the November 30, 2006 conference and herein, the Court granted plaintiff's motion compel and awarded plaintiff sanctions against defendant's counsel, Nancy J. Block.

**Discussion**

As a threshold matter, the Court addresses whether the information sought by plaintiff is relevant to "any claim or defense" in this action. Fed. R. Civ. P. 26(b)(1). Pursuant to Rule 26(b), any information that is not privileged and is "reasonably calculated to lead to the discovery of admissible evidence" may be discovered. National Congress for Puerto Rican Rights v. City of New York, 194 F.R.D. 88, 92 (S.D.N.Y. 2000) (citation omitted). Here, plaintiff seeks information regarding the dates of, *inter alia*, patient admission, radiation, follow-up treatment and death in relation to her claims for false advertising and deceptive business practices under Gen Bus. Law §§ 349 and 350 and her common law fraud claim.

General Business Law §§ 349 and 350 respectively prohibit "deceptive acts or practices" and "false advertising" "in the conduct of any business, trade or commerce or in the furnishing of any service in this state." "To state a claim for deceptive practices under either section, a plaintiff must show: (1) that the act, practice or advertisement was consumer-oriented; (2) that the act, practice or advertisement was misleading in a material respect, and (3) that the plaintiff was injured as a result of the deceptive practice, act or advertisement." Leider v. Ralfe, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005) (quoting Pelman v. McDonald's Corp., 237 F. Supp. 2d 512, 525 (S.D.N.Y. 2003)). The gravamen of plaintiff's complaint is that defendants violated these provisions of the General Business Law and committed common law fraud by making false claims regarding the success of their Body Radiosurgery cancer treatment. Among other things, defendants claimed that the procedure had a 95% success rate. (See Pl.'s Mt., at 6.) Evidence of the exact dates – day, month and year – of, *inter alia*, patient admission, radiation, follow-up treatment and death, is relevant to how patients responded to the hospital's treatment, and thus

the veracity of defendant's claims. Indeed, Dr. Gilbert Lederman, who ran the hospital's cancer treatment program, measured the success of patients' responses to the treatment in months:

> For those undergoing chemotherapy treatment[,] the median survival was 9.8 months and the one year survival rate or the percentage of patients alive twelve months after diagnosis was 25%. In contrast, the 45 patients treated with body radiosurgery and followed at least a year, showed that of all patients treated[,] the median survival was 10.6 months and at one year 44% were alive . . . . Our median survival of those who are felt to be unresectable was 9.5 months and of those patients who were resectable[,] the median survival was 41 months.

(Pl.'s Mt., at 6.) Furthermore, Mr. Volpicella testified that dates of treatment and death are necessary to calculate the survival rate. (Pl.'s Mt., Exh. 8, 10/12/06 Volpicella Tr., at 110-112.) Therefore, more so than the years, the months and days of patient treatment are necessary to calculate patient survival, tumor control and efficacy of treatment and are thus relevant in determining whether defendant's statements were materially misleading. Moreover, as the Court previously found, evidence regarding treatment outcomes is "discoverable in connection with plaintiff's common law fraud claims because such evidence relates to whether defendant acted with the requisite intent to defraud." (Doc. No. 75, at 3-4.)

Because the Court concludes that the information sought by plaintiff is discoverable under Rule 26(b), the Court next addresses whether such information is privileged, without addressing whether SIUH did and could waive the privilege it now belatedly invokes. HIPAA prevents health care providers from disclosing "individually identifiable health information," stating:

> (a) . . . Health information that does not identify an individual and with respect to which there is no reasonable basis to believe that the information can be used to identify an individual is not individually identifiable health information.

> (b) . . . A covered entity [such as SIUH] may determine that heath information is not individually identifiable health information *only if*:
>
>> (1) A person with appropriate knowledge of and experience with generally accepted statistical and scientific principles and methods for rendering information not individually identifiable:
>>
>>> (I) Applying such principles and methods, determines that the risk is very small that the information could be used . . . to identify an individual; . . . *or*
>>
>> (2)(i) The following identifiers of the individual . . . are removed:
>>
>>> (C) *All elements of dates (except year)* for dates directly related to an individual, including birth date, admission date, discharge date, dates of death . . . .

(45 C.F.R. § 164.514(a),(b) (emphasis added).) Notably, however, covered entities may disclose such information in response to "legal process, warrant, subpoena, order, or other legal process issued by a grand jury or a judicial or administrative tribunal" (§ 164.514(h)(iii)(B)), or if it "obtains satisfactory assurance . . . that the limited data set recipient will only use or disclose the protected health information for limited purposes" (§ 164.514(e)(4)(i)).[4]

In this case, SIUH's Body Radiosurgery Database contains complete dates "directly related to an individual, including birth date, admission date, discharge date, [and] date of birth," which are protected by HIPAA. (See § 164.514(b)(2)(C).) On the other hand, without the patients' names, addresses, telephone numbers or social security numbers, which plaintiff has agreed may be redacted, the other dates in the database could not be used to identify the patients. Furthermore, on April 13, 2006, the Court ordered the parties to file a stipulation for a protective

---

[4] SIUH does not explain Mr. Volpicella's testimony that, as a former employee of SIUH, he still retains the original CD of the complete database at his home in the context of SIUH's assertion that it is obligated to protect patient information contained in the CD.

order (See Doc. No. 75, at 9), which would have allowed defendant to produce such arguably protected data, pursuant to 45 C.F.R. § 164.514(e)(4)(i).

Moreover, even if the complete dates of patient information in SIUH's Body Radiosurgery Database are privileged under HIPAA, defendant's counsel was nevertheless under an obligation to disclose that it was withholding that information. Rule 26(b)(5) provides,

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged . . . the party *shall make the claim expressly and shall describe the nature of the documents* . . . not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

(Fed. R. Civ. P. 26(b)(5) (emphasis added).) In February 2006, pursuant to the Court's order that SIUH provide a privilege log, SIUH failed to list dates on its privilege log, and thus failed disclose that it was withholding complete dates from plaintiff. In addition, by labeling certain entries on the database "REDACTED," while failing to similarly label those entries for which it had removed dates, SIUH obfuscated the very existence of the complete dates. Indeed, it was not until plaintiff deposed Frank Volpicella – eight months after defendant had produced its privilege log – that plaintiff learned that: (a) the database contained complete dates; (b) defendant had removed the complete dates; and (c) defendant had failed to disclose as much on its privilege log or on the hard copy of the database print-out.

Furthermore, defendant was under a continuing obligation to supplement its privilege log whenever it subsequently produced documents and withheld portions of the information as privileged. Rule 26(e) provides, "A party who . . . has responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired . . . ." (Fed. R. Civ. P. 26(e).) SIUH

produced its privilege log on February 2, 2006, pursuant to court order following plaintiff's motion to compel. (See Pl.'s Mt., Exh. 12.) Three weeks later, it produced a redacted version of the Body Radiosurgery Database. (See Pl.'s Mt., at 1.) Because SIUH redacted information on the database, defendant had a duty to supplement its privilege log to disclose the fact of the redactions and the nature of the privilege. Instead, defendant only supplemented its privilege log after plaintiff became aware that it was incomplete. Ms. Block's argument that defendant is not in violation of its discovery obligations because she "offered to participate in a Conference in lieu of a motion," and advised the Court and plaintiff that SIUH would redact "patient information" in the database, is beside the point. Ms. Block repeatedly represented to plaintiff and the Court that, in response to plaintiff's discovery requests and motions to compel, and this Court's orders, SIUH had produced everything responsive to plaintiff's requests without revealing the full extent of information withheld. (Pl.'s Mt., Exh. 5, at 28, 34-35 and 50.) The parties and the Court relied upon those statements, and, without SIUH's complete candor, could not know that SIUH was, in fact, withholding additional information in violation of court orders and the Federal Rules of Civil Procedure. Therefore, SIUH's inaccurately redacted database, misleading statements and untimely disclosure violated Rule 26(b) and (e), as well as the underlying spirit of the Federal Rules.

As noted above, in addition to requesting discovery, plaintiff also seeks reasonable costs and expenses, including attorneys' fees, of this application and preparing and taking the deposition of Frank Volpicella, pursuant to Rule 37(a)(4)(A) or 37(b)(2)(A)(B)(C). Rule 37(a)(4)(A) provides in relevant part,

> If the motion [to compel disclosure or discovery] is granted . . . [,] the Court *shall*, after affording an opportunity to be heard, require the party or

> deponent upon whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses it incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action . . . .

(Fed. R. Civ. P. 37(a)(4)(A) (emphasis added).)  Rule 37(b)(2) provides in relevant part,

> If a party or an officer, director or managing agent of a party . . . *fails to obey an order to provide or permit discovery*, . . . the court . . . may . . . order that the matters regarding which the order was made . . . shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order; . . . refus[e] to allow the disobedient party to support or oppose designated claims or defenses, . . . strik[e] out pleadings or parts thereof . . . .

(Fed. R. Civ. P. 37(b)(2)(A)(B)(C) (emphasis added).)

Because the Court did not issue an order specifically requiring defendants to produce complete dates in the database, defendants have not directly violated a court order, and thus have not violated Rule 37(b)(2)(A)-(C).  The Court notes, however, that it could not previously order such disclosure because it, like plaintiff, was told by SIUH that all requested information had been provided and did not know that complete dates existed.  Moreover, SIUH should have known that complete dates are relevant and that their existence should have been disclosed based on the Court's prior order directing defendant to produce all evidence relating to the outcome of its medical treatments.

Therefore, because the Court grants plaintiff's motion to compel, the Court turns to Rule 37(a)(4)(A).  Plaintiff's counsel made a good faith effort to resolve the dispute without Court intervention when he wrote to defendant requesting a complete copy of the database, back-up CD and hard drives.  (<u>See</u> Pl.'s Mt., Exh. 9.)  When defendant objected to producing the documents and, instead, served an untimely privilege log, plaintiff was forced to seek the Court's

intervention for a third time. (See Pl.'s Mt., Exh. 10.) Sanctions are thus warranted and granted in this case because defendant's counsel: (1) failed to list dates on its privilege log; (2) failed to note that the full dates had been redacted from the database, despite the fact that other entries were noted as redacted on the hard copy of the database produced to plaintiff; (3) made representations several times to plaintiff and this Court that she had provided full and complete discovery; (4) waited eight months after producing the database and first privilege log – and after Mr. Volpicella's deposition alerted plaintiff to the dates' existence – to disclose that dates were redacted and produce a supplemental privilege log; and (5) failed to provide any plausible or acceptable written or oral explanation for her conduct, despite being requested to do so.

**Conclusion**

Therefore, for the reasons stated above, the Court orders as follows:

(1) defendant shall produce a complete and true copy of SIUH's Body Radiosurgery Database in electronic and hard copy, subject to the redaction only of patients' names, addresses, telephone numbers and social security numbers, and specifically stamp "REDACTED" on each and every entry for which information was redacted, within one week of the date of this order;

(2) defendant shall submit a statement correlating the entries in SIUH's Body Radiosurgery Database to its response to particular interrogatory and document requests, within two weeks of the date of this order;

(3) defendant shall preserve the original CD containing a back-up copy of SIUH's Body Radiosurgery Database;

(4) defendant shall identify any and all software required to access SIUH's Body Radiosurgery Database within one week of the date of this order;

(5) defendant shall provide a sworn affidavit, from a hospital representative with personal knowledge, describing the efforts, including the dates of such efforts, that defendant has taken to locate and preserve each and every hard drive containing SIUH's Body Radiosurgery database, within one week of the date of this order;

(6) defendant shall produce Frank Volpicella for one additional day of deposition, not to exceed seven hours in length;

(7) fact discovery shall be extended an additional six months, to conclude no later than 5/31/06;

(8) pursuant to Fed. R. Civ. P. 37(a)(4)(A), the Court awards sanctions against Ms. Nancy J. Block, Esq., solely, and not her client, for plaintiff's reasonable costs and attorneys' fees in preparing this motion. By December 14, 2006, plaintiff's counsel shall submit an affidavit by ECF with supporting documentation for his time spent in preparing this motion, his experience and hourly billing rate, as well as a description of what services were performed and the costs associated with filing this motion. Ms. Block may respond to the reasonableness of plaintiff's calculations by December 21, 2006. The Court declines to award plaintiff the costs associated with the prior depositions of Frank Volpicella because plaintiff would have deposed him regardless of defendant's actions, and will not incur much additional cost in preparation for his forthcoming deposition; and

(9) defendant Gilbert Lederman, M.D., shall supplement his discovery responses as discussed by counsel, by December 12, 2006.

SO ORDERED.

Dated: December 5, 2006
      Brooklyn, NY

                                                /s/
                                        KIYO A. MATSUMOTO
                                        United States Magistrate Judge